## Maryland Casualty Co. v. Cowherd.

Dec. 6, 1940.

Ira D. Smith, Judge.

H. W. Linton for appellant.

White & Clark for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, hereinafter referred to as "company," was surety on bonds of appellee, sheriff of Christian County, for four years, beginning January 1926. In 1932 proper authorities instituted suit against principal and surety, charging failure of appellee to account for certain collected revenues, thereby breaching the covenants of the bond obligation. The trial of this suit was prolonged, and was successfully resisted by both principal and surety, by separate array of counsel.

In the instant suit the company, plaintiff below, after setting out in detail the former suit, procedure and result, alleged that it was necessary to, and it did, employ in defense, counsel other than those employed by appellee, and in so doing incurred and paid attorneys' fees, amounting to $350, and other legitimate expenses, the total being $380.85, for which amount it sought recovery from appellee.

Though not pertinent to the issue, it is noted that appellee offered to confess judgment in the sum of $150, plus accrued costs. Apparently this offer was rejected,

since appellee answered, in general terms denying the material allegations of the petition, affirmatively pleading that when the original suit was instituted, the surety had knowledge of the fact that he would employ competent attorneys for himself and on behalf of the surety; that he did employ attorneys to defend, and such attorneys defended the action successfully.

He charged that employment of counsel by the surety was unnecessary, and that in fact they performed little or no service of value, and that the fee paid was unreasonable; that the employment of counsel by company was without his consent, and was company's voluntary act. On his plea he asks that surety's petition be dismissed. Pleadings were completed, and the two issues were submitted to the jury under an instruction criticized, and which, if necessary, will be later noted. The jury returned a verdict in favor of defendant; motion for new trial was overruled, judgment entered in accord with the verdict, and on motion for appeal we are asked to review to ascertain whether judgment was erroneously awarded. The portion of the contract upon which company based its right to recover, in substance, reads:

> "I bind myself * * * to pay to said company any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatsoever kind and nature which said company shall or may for any cause sustain or incur, or be put to by reason of said company's having * * * executed said bonds or renewals thereof, * * * and I do further agree that any voucher or other evidence of payment, compromise or settlement of any claim, costs, charges or expenses whatever, the said company may sustain or incur by reason of such suretyship shall be prima facie evidence of the fact and of the extent of any liability under said obligation to said company."

For appellant it is argued, as it was in the court of first instance, that (1) the proof shows that the attorneys for company rendered necessary and essential services, aided materially the principal's defense to the original suits, and fee and charges were reasonable. (2) The court erred in refusing to give a peremptory instruction for defendant at the close of all the evidence.

In addition it is contended that the court erred in admission and rejection of evidence offered; misconduct of counsel for the defendant in asking whether or not he, appellee, had paid the surety "thousand of dollars," in premiums on his bonds.

The original suit was filed in 1932, wherein the commonwealth, for the benefit of Christian County, undertook to collect from Cowherd and the Company, something like $6,000, representing revenues retained by him as salary and expenses for the years 1928 and 1929, contrary to the limitations of the Constitution and laws. To the petition and amendments Cowherd filed separate answer and amended answer, the pleadings being prepared by attorneys employed by him. The company by its counsel filed demurrer, motion to make more specific, and its separate answer, though adopting Cowherd's answer. Cowherd's amended answer was filed on April 15, 1933, and shortly thereafter the company by its counsel filed a lengthy amended answer, which it made a cross-petition against members of the fiscal court, charging settlements and quietus for the years in question, and that the court had knowledge of the facts, and of the acts of Cowherd, and took no steps to require him to account for alleged shortages.

The company charged that by their failure, since Cowherd was insolvent, the court had misled the surety to its prejudice, and by its gross negligence was estopped to maintain the suit for recoupment. On cross-petition it asked for judgment over, in case it had to pay.

James G. Wheeler was a member of the Paducah firm, which represented the surety in the original suit, and had represented the company generally. Some member made several trips for the purpose of investigating the records. They prepared all responsive pleadings for the company, and set up a defense separate from that of Mr. Cowherd. He tells of having written to Mr. Cowherd to meet members of his firm, for conference, but for some reason appellee failed to show up. On the first trip counsel learned that Cowherd had employed counsel, and they immediately got in touch with counsel, and thereafter the two firms worked in perfect harmony. He thinks surety filed answer first, after getting information from counsel for Cowherd. This

witness sets out in detail the procedure, the practice, and the number of trips made.

His firm had concluded that due to the situation, which later resulted in the filing of the cross-petition, and otherwise, that it necessitated a special defense by the surety. "It was a difficult suit and not free from danger to the surety. The defenses were not identical." He says that counsel for Cowherd asked for conferences with his firm, because counsel for Cowherd was not representing the company in any sense. He was asked to tell of information coming to him as to Mr. Cowherd's financial ability at the time of the litigation, but the court refused to permit answer, but he avowed: "My information from Mr. Cowherd's counsel was in substance that Mr. Cowherd would be unable to pay anything except a small amount." We see no valid reason why this should not have been admitted.

Witness said the company had paid the fee and expenses, and that the fee paid would have been greater, except for assistance by Dr. Cowherd's attorney. Mr. S. Y. Trimble testified as to the high standing of the Paducah firm. After this proof the appellant moved for a peremptory instruction, which the court overruled.

Appellee and one of his counsel testified in behalf of Mr. Cowherd. The former testified that he employed White and Clark of Hopkinsville to take charge of his defense in the original suit; that he did not employ Wheeler, Wheeler and Shelbourne, and that surety never communicated with him "at the time he was sued" in any way relative to employment of counsel, and he first got a bill from the surety three years after the case was decided. He says he never personally consulted the surety's counsel. He then tells what his counsel did in the preparation and trial of the case, and he was allowed, over objection, to say that he paid his attorneys $150. He says none of the Paducah attorneys were present at the taking of depositions, and he was not present when the case was argued. On cross-examination he could not recollect having received a letter, proven to have been mailed to him, on January 13, 1933, by surety's counsel, asking him for a conference, "to discuss generally the case of Christian County v. Cowherd." The court should have withdrawn from the jury any statement as to payment of fees by Cowherd to his

counsel. The issue was the reasonableness of the fee to company's counsel.

A member of the Hopkinsville firm said that he had active charge of the law suit "for the defendant S. L. Cowherd," and knew at the time that the Paducah firm was representing surety. He prepared all pleadings for Mr. Cowherd; pleadings for the surety were prepared by the Paducah firm. No proof that he knew of was taken by that firm; he argued the case on behalf of Mr. Cowherd. "Mr. Wheeler was present, and he may have had something to say in argument." He had no information that the company was going to make a charge against Mr. Cowherd. "Mr. Wheeler and I were good friends, and realized that we had some fight to make, and we worked together very harmoniously. * * * The standing of the firm is very high."

We have above briefly indicated our conclusion on two objections to matters relating to objections to evidence admitted and rejected. The remaining minor point relates to the alleged misconduct of the appellee's counsel in asking him to state "how many thousands of dollars, in all, you paid this company to sign your bond." The court sustained an objection to this question, and very properly so. That matter was not in issue; was totally irrelevant to the issues, and apparently was asked, not for the purpose of throwing light on the questions involved; its effect was merely to create bias in the minds of the jury.

The matter before us resolves itself into the question as to whether or not the court should have given a peremptory instruction at the close of all the evidence. Counsel for appellee argue at some length that it is and has always been contrary to public policy to enforce contract for payment of fees, such as the one in question, and suggests that the case of Fidelity & Casualty Co. of New York v. Mauney, 273 Ky. 400, 116 S. W. (2d) 960, is a departure, and should be modified or overruled. We think that case is based on sound principles, as evidenced by cases from other jurisdictions, involving construction of a similar question. See cases cited in the Mauney case and American Surety Co. v. Vinsonhaler, 92 Neb. 1. 137 N. W. 848. Indeed the principle of law seems to have been recognized in this court in Ellis v. Norman, 44 S. W. 429, 19 Ky. Law Rep. 1798, and as

pointed out in the Mauney case, such a contract is authorized by Kentucky Statutes, Section 723.

We believe we have, supra, sufficiently stated the facts so as to demonstrate that there was in reality no issue to be submitted to the jury. Since the contract upon which the company based its right to recover was a legal one, it became incumbent on appellee to show that the employment of counsel by company was without substantial reason, or that it failed to exercise a reasonable discretion as to necessary measures of defense, and that the fee paid was an unreasonable one.

On the latter point there was no evidence, except from the inference that since appellee paid his attorneys only $150, this should be taken as a measure of pay for the services rendered by counsel for company, and at this point it may not be amiss to say that in our judgment, from the proof in the case, the fee and expenses were reasonable and legitimate.

It is true, as pointed out by appellee, that the facts in the Mauney case [273 Ky. 400, 116 S. W. (2d) 962], differ somewhat from those here, as is evidenced by the excerpt:

"The appellee was given opportunity to have his personal counsel represent the company, also, but he took no action towards having that done. The surety was being sued for a large sum of money and when its principal remained silent and did nothing to protect it, self-preservation demanded that it secure legal representation. It would have been negligent had it done otherwise. Its action was not only reasonable but necessary."

We also said in the same case:

"It would seem unnecessary to say that under such a contract of indemnity the indemnitee must act reasonably and in good faith and with due diligence."

We also quoted from Bankers' Surety Co. v. Cross, 100 Neb. 98, 158 N. W. 457:

"A surety who has procured indemnity against all expenses, including costs and counsel fees, by reason of his suretyship, may recover from the indemnitor counsel fees in defending an action on the

bond, where he had reasonable cause to believe that expenditure was necessary, although the principal on the bond had employed competent counsel.''

And in the Mauney case:

"These defenses [common here] ignore the clear and explicit contract to indemnify the company against any 'costs, charges or expenses it may sustain, incur or become liable for in consequence of' the bond. He was bound by the terms of his agreement.''

The terms of the agreement here discussed are couched in similar, if not exact language, and in construing the contract we find no difficulty in following the rule laid down in the Cross case, which, as we have seen, was perhaps more emphatically applicable in the Mauney case, but nevertheless applicable herein, as the matter was presented to the court both in pleading and proof.

It may be, or may have been, that the original case went out below on appellee's pleading. The record does not make this point clear. However this may be, or have been, it is quite evident upon a review of the pleadings and proof, that the company had reasonable grounds to believe that it was necessary to employ additional counsel, under the terms of the contract, and exercised a reasonable discretion in so doing. The situation as presented to us in respect of the proceedings in the original suit, indicate that there were pleadings by company which appellee was in no position to present, due to applicable law, and upon which the company had the right, under the indemnity contract to insist upon, and for which reasonable charges were allowable as against the indemnitor.

Counsel for appellee seems to fear that the court might undertake to broaden the rule laid down in the Mauney and other cases. It is not our intention so to do, but on the other hand to adhere strictly to the rule laid down therein. We are dealing with this particular case and issues presented by the pleadings and proof, and are undertaking to convey the idea only that the indemnitee should be allowed to select and employ counsel, at expense of indemnitor only in such cases wherein it may be made to appear that the employment was in

good faith and the situation was such as to make it reasonably necessary.

With the foregoing expression it becomes our duty to sustain appellant's motion, to grant appeal and to reverse and remand the case; and if proof be not materially different and more convincing than such as presented here, the court should direct a peremptory instruction for appellant.